**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**ROBERT E. ZOLNOWSKI,**

                                    **Plaintiff,**                    **12-CV-1190S(Sr)**

**v.**

**KALEIDA HEALTH,**
**BUFFALO GENERAL HOSPITAL,**

                         **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

                 This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #7.  Thereafter, the case was reassigned to the Hon. William

M. Skretny.  Dkt. #14.


                 Plaintiff commenced this action alleging discrimination on the basis of sex,

in violation of Title VII of the Civil Rights Act  of 1964, 42 U.S.C. § 2000e _et seq._ ("Title

VII"); discrimination on the basis of age, in violation of the Age Discrimination in

Employment Act of 1967, 29 U.S.C. § 621 _et seq._ ("ADEA"); and retaliation following

complaints of sex and age discrimination.  Dkt. #1.


                 Currently before the Court is defendant's motion to dismiss the complaint

as time barred and for failure to allege adverse employment action or protected activity.

Dkt. #5.  For the following reasons, it is recommended that defendant's motion to

dismiss be granted in part.

## BACKGROUND

Plaintiff, Robert E. Zolnowski, is a male over the age of 55.  Dkt. #1, ¶ 9.
He commenced employment with Buffalo General Hospital as a radiology technologist
on June 28, 2004. Dkt. #1, ¶ 9.  Plaintiff has received excellent performance reviews
throughout his employment at Buffalo General Hospital.  Dkt. #1, ¶ 156.

During the summer of 2009, Nancy Matusiak, Manager of Radiology,
selected plaintiff to be on a billboard representing Kaleida's radiology department.  Dkt.
#1, ¶¶  11 & 32.  Immediately after the billboards appeared, Mark Amborski and Ronald
Stoddard, Lead Radiology Technicians responsible for employee scheduling, altered
plaintiff's schedule so that he was assigned to work in the emergency room or surgical
room every day.  Dkt. #1, ¶¶ 12-13, 41-43 & 47.  Lead Radiology Technician Craig
Zolnowski was the only individual to continue to rotate plaintiff in accordance with prior
practice.  Dkt. #1, ¶¶ 13 & 49.  Plaintiff alleges that the emergency room and surgery
room are considered the most onerous and stressful assignments and, prior to the
appearance of plaintiff on the billboards, no radiology technician was assigned to work
one of these more difficult assignments more than once per week.  Dkt. #1, ¶¶ 38-42.
In addition, plaintiff alleges that Mark Amborski stopped assigning lunch relief to
plaintiff, while other radiology employees continued to have lunch relief assigned.  Dkt.
#1, ¶ 45.  Mr. Amborski and Mr. Stoddard also stopped speaking to plaintiff.  Dkt. #1,
¶ 48.  Plaintiff reported to Ms. Matusiak that Mr. Amborski and Mr. Stoddard were
singling him out for a disparately difficult schedule, but plaintiff continued to receive the
more difficult assignments.  Dkt. #1, ¶¶ 50-51 & 57.

Plaintiff alleges that Mr. Amborski and Mr. Stoddard are friends and that

Mr. Amborski was engaged in an intimate relationship with Ms. Matusiak. Dkt. #1, ¶¶ 27 & 46. Plaintiff is approximately a decade older than Mr. Amborski. Dkt. #1, ¶ 36. Mr. Amborski is alleged to talk "about his sexual exploits, his genitalia, and his sexual interests continually throughout each day." Dkt. #1, ¶ 14. He is alleged to have engaged in such discussions with Mr. Stoddard and "all of the employees in the radiology department." Dkt. #1, ¶ 16. He is also alleged to view pornography on work computers and "flirt with and make sexual advances toward all of the younger female employees, especially the new employees." Dkt. #1, ¶¶ 18 & 21. Male employees who played along with Mr. Amborski's "sexualized behavior" are alleged to have been "rewarded and protected." Dkt. #1, ¶ 160. Plaintiff chose not to engage with this behavior. Dkt. #1, ¶ 160.

Plaintiff alleges that Mr. Amborski gave preferential treatment to younger employees, especially those he considered attractive. Dkt. #1, ¶ 52. For example, plaintiff alleges that Mr. Amborski convinced Ms. Matusiak to hire his younger female friend, Kelly. Dkt. #1, ¶ 53. Mr. Amborski would order plaintiff to take care of patients who had been waiting while he and Kelly did crossword puzzles, causing those patients and their physicians to assume that plaintiff was the cause of the delay. Dkt. #1, ¶ 55. Kelly was almost never assigned to work the surgical rooms. Dkt. #1, ¶ 61. Another female employee who participated in Mr. Amborski's graphic sexual conversations, Celia, was also almost never assigned to work in the surgical rooms. Dkt. #1, ¶ 61. In contrast, older employees such as plaintiff, Gloria Appell and Bill Wesolowski were assigned to the surgical rooms frequently. Dkt. #1, ¶ 62.

In April of 2010, plaintiff, Bill Wesolowski, and several other radiology

employees met with Ms. Matusiak to discuss Mr. Amborski's behavior.  Dkt. #1, ¶ 58.
The radiology employees informed Ms. Matusiak that Mr. Amborski assigned older
employees to the surgical rooms more frequently than younger employees and showed
her the schedules indicating Mr. Amborski and Mr. Stoddard's disparate treatment of
older employees.  Dkt. #1, ¶¶ 63-64.

In June of 2010, plaintiff reported to Human Resources that he had been
singled out for an extremely difficult schedule, prompting a meeting with Debbie
Abelson from Human Resources, Ms. Matusiak, Mr. Amborski, Mr. Stoddard and
plaintiff.  Dkt. #1, ¶ 70.  Mr. Amborski and Mr. Stoddard allegedly chastised plaintiff for
being the slowest technician in the building and for not knowing how to perform
angiograms, a procedure plaintiff alleges Mr. Amborski declined to teach plaintiff and
only allowed the younger employees to perform.  Dkt. #1, ¶¶ 74-77.  Plaintiff
complained that he was assigned to surgery and the emergency room every shift,
explained why these two assignments were the least desirable and noted that "he was
especially singled out, but that older employees in general got disparately difficult
assignments."  Dkt. #1, ¶ 80.

When Mr. Amborski and Mr. Stoddard continued to assign plaintiff the
worst possible schedule, plaintiff contacted his union, which scheduled a meeting
attended by Human Resources; John Micek, Director of Imaging; Ms. Matusiak; plaintiff;
and at least a dozen other radiology technicians and union representatives.  Dkt. #1,
¶¶ 85-86.  Plaintiff and Gloria Appel reported that Mr. Amborski and Mr. Stoddard

continued to subject them disparate treatment based on age.  Dkt. #1, ¶ 88.  Despite

Ms. Abelson's direction to Ms. Matusiak to correct the situation, plaintiff alleges that Mr.

Amborski and Mr. Stoddard continued to assign older employees to worse schedules

and that plaintiff, "the older employee who had been selected as the attractive face of

the department," continued to receive "the worst schedule."  Dkt. #1, ¶¶ 92-93.

In December of 2010, Mr. Amborski was placed on progressive discipline

and was no longer allowed to make the schedule.  Dkt. #1, ¶ 97.  Later that day, as

plaintiff went to leave work, he discovered that all four tires on his car had been

punctured.  Dkt. #1, ¶ 100.  Plaintiff alleges that Mr. Amborski knew what kind of car

plaintiff drove and where he parked.  Dkt. #1, ¶ 101.  When another employee

discussed the incident with Mr. Amborski, he responded, "[h]e doesn't have any proof

that I did that to his car."  Dkt. #1, ¶ 103.  Six days later, Human Resources informed

plaintiff that they feared for his safety and directed him to take two weeks off with pay.

Dkt. #1, ¶ 106.  When plaintiff returned to work in January of 2011, Mr. Amborski was

permitted to make some of the work schedules.  Dkt. #1, ¶ 108.  Ms. Matusiak inquired

if plaintiff was alright, stating that she was concerned for plaintiff's safety.  Dkt. #1,

¶ 112.

On February 9, 2011, plaintiff accidentally clicked on the wrong patient as

he was scrolling through a list of names.  Dkt. #1, ¶ 114.  Ms. Matusiak wrote plaintiff

up for his error, even though other radiology employees made this same error several

times per week. Dkt. #1, ¶¶ 115 & 127-128.  Plaintiff refused to sign the disciplinary

report and went to Human Resources with his union representative, at which time Ms. Matusiak denied writing plaintiff up.  Dkt. #1, ¶¶ 130 & 132-133.

On February 19, 2011, even though Mr. Amborski had barred plaintiff from receiving training to perform angiograms, Mr. Amborski assigned plaintiff to perform an angiogram.  Dkt. #1, ¶ 139.  Because plaintiff had "seen some angiograms performed, he went to do the angiogram, as assigned," but was prevented from doing so by the absence of the foot pedal on the angiogram machine.  Dkt. #1, ¶¶ 140-141.  Mr. Stoddard blamed plaintiff for losing the foot pedal, which reappeared after plaintiff reported it missing.  Dkt. #1, ¶¶ 142-143.

On March 3, 2011, plaintiff set his glasses and ID badge on a table in a restricted room and walked 10 feet to retrieve his coat.  Dkt. #1, ¶ 144.  When he returned to the table, his badge was missing and Mr. Amborski's friend, Celia, had left the room.  Dkt. #1, ¶¶ 144-146.  Plaintiff immediately reported the theft of his badge to security and to Ms. Matusiak, who returned the badge to him the next day.  Dkt. #1, ¶¶ 147-149.

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), which cross filed the complaint with the Equal Employment Opportunity Commission ("EEOC"), on March 29, 2011.  Dkt. #1, ¶ 6.  The NYSDHR issued a Determination and Order after Investigation, finding no probable cause, on May 30, 2012.  Dkt. #1, ¶ 7.  The EEOC issued a Notice of Suit Rights, commonly

known as a right to sue letter, dated August 29, 2012.  Dkt. #6-2.  The letter is copied to

Kaleida Health, but not plaintiff's attorney.  Dkt. #6-1, p.2 & Dkt. #6-3, p.3.  The

envelope is postmarked September 10, 2012.  Dkt. #6-2.  Plaintiff declares that he

received the Right to Sue letter on September 13, 2012.  Dkt. #6-2.  Plaintiff's complaint

was filed on December 3, 2012.  Dkt. #1.  Mr. Amborski continued to schedule plaintiff

as of the filing of the complaint. Dkt. #1, ¶ 152.


## DISCUSSION AND ANALYSIS

**Statute of Limitations**

Defendant argues that the complaint is untimely because it was filed on

December 3, 2012, more than 90 days after the date of the EEOC's Notice of Suit

Rights.  Dkt. #5-1, p.7.


Plaintiff argues that the complaint was filed within 90 days of his receipt of

the right to sue letter on September 13, 2012.  Dkt. #6, pp.4-6.


An affirmative defense based on failure to timely commence an action

under the applicable statute of limitations is properly brought by way of a motion to

dismiss for failure to state a claim upon which relief can be granted pursuant to Rule

12(b)(6).  *See Garner v. DII Indus., LLC*, 2011 WL 573567, at *2 (W.D.N.Y. Feb. 15,

2011), *citing Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)

("Where the dates in a complaint show that an action is barred by a statute of

limitations, a defendant may raise the affirmative defense in a pre-answer motion to

dismiss.").

If matters outside the pleadings are presented to the court, the motion must be treated as one for summary judgment under Rule 56 and parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d). As defendant was afforded the opportunity to reply to plaintiff's submission of affidavits and exhibits from plaintiff and his attorney regarding receipt of the EEOC's Notice of Suit Rights, it is permissible to resolve the statute of limitations argument under the summary judgment standard. *See In re G. & A. Books, Inc*., 770 F.2d 288, 295 (2d Cir. 1985), *cert. denied sub. nom M.J.M. Exhibitors, Inc. v. Stern*, 475 U.S. 1015 (1986).

42 U.S.C. § 2000e-5(f)(1) states that after the EEOC has dismissed a charge, the Commission "shall notify the person aggrieved and within ninety days after the giving of such notice, a civil action may be brought against the respondent named in the charge." "ADEA plaintiffs may file suit in court at any time from 60 days after filing the EEOC charge until 90 days after the plaintiff receives notice from the EEOC that the EEOC proceedings are terminated." *Hodge v. New York Coll. of Podiatric Med*., 157 F.3d 164, 166 (2d Cir. 1998); *see* 29 U.S.C. § 626(e).

The 90-day clock begins when the plaintiff receives the right to sue letter. *Casamento v. New York Stock Exch., Inc.*, No. 95 CIV. 0201, 1995 WL 373494 (S.D.N.Y June 22, 1995)*; Streeter v. Joint Indus. Bd. Of Elec. Indus.,* 767 F.Supp. 520, 527 (S.D.N.Y. 1991). Absent equitable considerations, the statute of limitations expires

if the District Court Clerk has not received a complaint within 90 days of the date the plaintiff receives a right to sue letter from the EEOC. *Nearhood v. Tops Markets, Inc.*, 76 F. Supp.2d 304, 305-306 (W.D.N.Y 1999). Thus, "[i]n order to be timely, a claim . . . must be filed within 90 days of the claimant's receipt of a right-to-sue letter." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). "Normally it is assumed that a mailed document is received three days after its mailing." *Id.*, *citing Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984); *see* Fed. R. Civ. P. 6(e).

In the instant case, although the EEOC's Notice of Suit Rights is dated August 29, 2012, it was not postmarked until September 10, 2012. Dkt. #6-2. Plaintiff's declaration that he received the Notice of Suit Rights on September 13, 2012 is consistent with the postmark of September 10, 2012. Dkt. #6-2. Accordingly, it is recommended that the defendant's motion to dismiss the complaint as untimely be denied on the ground that plaintiff's complaint, which was filed on December 3, 2012, was filed within 90 days of his receipt of the EEOC's right to sue letter on September 13, 2012.

**Dismissal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Id., quoting Twombly*, 550 U.S. at 555.  Thus, a plaintiff need not plead a *prima facie* case of discrimination, but must give the defendant fair notice of plaintiff's claim and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

**Discrimination**

To state a claim of discrimination, whether sex discrimination under Title VII or age discrimination under the ADEA, a plaintiff must plead facts plausibly suggesting that: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Bucalo v. Shelter Island Union Free Sch. Dist.,* 691 F.3d 119, 129 (2d Cir. 2012); *Vivenzio v. City*

*of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).


<u>Adverse Employment Action</u>

Defendant argues that plaintiff's complaints of a more onerous schedule, lack of training and being placed in a situation where patients and doctors thought he was the reason patients were waiting for treatment when in reality Mr. Amborski and his favored employees were not performing their duties do not constitute adverse employment action.  Dkt. #5-1, pp.11-13.


Plaintiff responds that Mr. Amborski's assignment of more onerous tasks to plaintiff, refusal to train plaintiff to perform angiograms, and positioning of plaintiff to take the blame for delays in treating patients caused by favored employees shirking their responsibilities constitute adverse employment actions.  Dkt. #6, pp.9-11.


"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation omitted).  "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.*

Where assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action. *Grant v. New York State Office for People with Disabilities,* No. 12-CV-4729, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (collecting cases); *Williams v. New York City Hous. Auth.*, No. 03 Civ. 7764, 2008 WL 2695139, at *3 (S.D.N.Y. June 29, 2008), *aff'd*, 361 Fed. Appx. 220 (2d Cir. Jan. 19, 2010)*; See Billingslea v. Ford Motor Co., Inc.*, No. 06-cv-556, 2010 WL 4861500, at *7 (W.D.N.Y. Nov. 30, 2010) ("A plaintiff's assigned task, however undesirable it may be, does not constitute an adverse employment action . . . if it falls within his . . . job responsibilities."); *Martin v. MTA Bridges & Tunnels*, 610 F. Supp.2d 238, 254 (S.D.N.Y. 2009) ("No reasonable employee would think being asked to perform tasks that are part of her job description constituted a materially adverse employment action."). In contrast, the assignment of a disproportionately heavy workload constitutes an adverse employment action. *Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004).

In the instant case, plaintiff does not allege that he was assigned procedures beyond those expected of a radiology technologist or that his assignment to the emergency room or surgical room every day in which either Mr. Amborski or Mr. Stoddard was responsible for scheduling plaintiff resulted in a disproportionately heavy workload or negatively impacted his employment status. The fact that plaintiff perceived assignments in the emergency room and surgical room as more onerous and stressful is insufficient, without more, to plausibly allege an adverse employment action.

Similarly, while the denial of professional training opportunities may constitute an adverse employment where it bears on either plaintiff's opportunities for professional growth and career advancement or directly upon plaintiff's compensation, plaintiff has alleged no material harm resulting from Mr. Amborski's refusal to train him to perform angiograms. *See Majeed v. ADF Cos.*, No. 11-CV-5459, 2013 WL 654416 at *8 (E.D.N.Y. Feb. 20, 2013); *Hill v. Rayboy-Brauestein*, 467 F. Supp.2d 336, 352 (S.D.N.Y. 2006).

Furthermore, whatever scrutiny plaintiff may have felt as a result of Mr. Amborski's failure to appropriately supervise other employees, and whatever animosity Mr. Amborski may have exhibited toward plaintiff, there is no allegation that plaintiff was subjected to disciplinary action or any other action with tangible effects upon his employment. *See Trachtemberg v. Dep't of Educ.*, __ F. Supp.2d __, 2013 WL 1335651, at *5 (S.D.N.Y. April 3, 2013) (collecting cases for the proposition that excessive scrutiny does not constitute adverse employment action in the absence of other negative results, such as a decrease in pay or being placed on probation and that in the absence of negative consequences attaching to alleged negative performance evaluations or other reprimands, courts have repeatedly found no adverse employment action); *Novak v. Waterfront Comm'n of N.Y. Harbor,* __ F. Supp.2d __, 2013 WL 831188 at *7 (S.D.N.Y. March 1, 2013) (personal animosity is not the equivalent of discrimination and an employer's alleged hostile attitude or sarcastic remarks do not constitute adverse action); *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp.2d 381, 393 (S.D.N.Y. 2011)("Negative evaluations or reviews, without accompanying

tangible harm or consequences, do not constitute materially adverse action altering the conditions of employment."); *Smalls v. Allstate Ins. Co.*, 396 F. Supp.2d 364, 371 (S.D.N.Y. 2005) (being yelled at and receiving unfair criticism do not rise to the level of adverse employment actions).

Because of Sex

Defendant argues that plaintiff does not allege disparate treatment based on sex because he alleges that both men and women were subjected to more difficult schedules.  Dkt. #5-1, p.9.

Plaintiff responds that "punishing male or female employees for not being the foreman's idea of sexually attractive is discrimination based on the sexual stereotyping of the foreman, *i.e.*, based on sex."  Dkt. #6, p.8.  More specifically, plaintiff argues that Mr. Amborski punished plaintiff,

> whom [Mr. Amborski] had categorized as unattractive[,] because he had been chosen by [Ms. Matusiak] to be the model for, and attractive public face of, the Radiology Department.  This failed to comport with [Mr. Amborski's] own sexual stereotypes and paradigms of sexual prowess. That is discrimination based on sex.

Dkt. #6, pp.8-9.

"The *sine qua non* of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be because of sex.'"  *Patane v. Clark*, 508 F.3d

106, 112 (2d Cir. 2007), *quoting Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 189

(2d Cir. 2001). "It is axiomatic that mistreatment at work . . . is actionable under Title VII

only when it occurs because of an employee's sex, or other protected characteristic."

*Id., quoting Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Where the claim

involves same-sex harassment, the Supreme Court has suggested three evidentiary

routes to establish gender-based discrimination: 1) evidence that the harasser was

homosexual and the harassment is motivated by sexual desire; 2) evidence that the

harasser is motivated by a hostility to the presence of the victim's sex in the workplace;

and 3) evidence that the harasser treated males and females differently in a mixed-sex

work environment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81

(1998).


In the instant case, plaintiff has alleged no facts to suggest that Mr.

Amborski changed plaintiff's schedule or otherwise treated him less favorably than

other employees because of his gender. To the contrary, plaintiff's allegations suggest

that Mr. Amborski favored employees who joined in his conversations about sex

regardless of their gender. Moreover, plaintiff's allegations are clear that alteration of

plaintiff's schedule occurred because Mr. Amborski was jealous that his paramour

selected plaintiff to appear on the billboard. That is insufficient to demonstrate

discrimination on the basis of sex. *See Brown*, 257 F.3d at 256 (2d Cir. 2001)

(allegations that harassment was the product of workplace dispute stemming from

union election negates claim of harassment because of sex). Thus, even if plaintiff had

plausibly alleged adverse employment action, it is recommended that his claim of sex

discrimination be dismissed for failure to plausibly allege that the adverse action occurred because of plaintiff's sex.

<u>Because of age</u>

Defendant argues that plaintiff fails to allege discrimination based on age because plaintiff's complaint is clear that Mr. Amborski changed his schedule because he was jealous that Ms. Matusiak chose plaintiff to appear on the billboard.  Dkt. #5-1, pp.12-13.

Plaintiff responds that he and his colleagues repeatedly met with defendant to report discriminate treatment based on age and that defendant acknowledged the problem, but failed to correct it.  Dkt. #6, p.11.

Plaintiff has alleged that Mr. Amborski engaged in discrimination based on age by assigning older employees, including himself, Bill Wesolowski and Gloria Appel, more frequent assignments in surgical rooms, which were less desirable assignments, and that plaintiff showed his supervisors schedules substantiating such disparate treatment of older employees.  This is sufficient to plausibly allege that the reason plaintiff was assigned to the surgical rooms was because of his age.  As set forth above, however, being assigned to the surgical rooms fails to rise to the level of an adverse employment action.  Accordingly, the allegations that older employees received less desirable assignments in the surgical rooms fails to state a plausible claim of age discrimination.

**Retaliation**

Defendant argues that plaintiff's complaint fails to allege protected activity and adverse employment action because the schedule changes plaintiff complains of occurred prior to his complaints of discrimination and because plaintiff failed to complain that his alleged mistreatment was because of his sex. Dkt. #5-1, pp.14-19. Specifically, defendant argues that plaintiff's allegations of retaliation for being selected for the billboard are not complaints of discrimination based on sex. Dkt. #5-1, p.15.

Plaintiff argues that because Ms. Matusiak was involved in a sexual relationship with Mr. Amborski, she should have understood "that when Plaintiff complained about disparate treatment as a result of being selected as the attractive face of the billboards, this was a report of discrimination based on sex." Dkt. #6, p.14. In addition, plaintiff responds that he complained about discrimination based upon age and thereafter discovered his tires slashed; found himself subjected to improper disciplinary action by Ms. Matusiak; was assigned to conduct a procedure he had not been trained to do and which he was only prevented from performing because the equipment had been sabotaged; and had his identification badge stolen. Dkt. #6, p.13. Plaintiff notes the other older employees also complained about age discrimination and that Human Resources agreed that older employees were being treated disparately and directed Ms. Matusiak to remedy the disparity. Dkt. #6, pp.17-19. Plaintiff also argues that defendant's failure to investigate plaintiff's reports of disparate treatment constitutes adverse action. Dkt. #6, p.16.

To state a claim for retaliation in violation of Title VII and/or the ADEA, a

plaintiff must plead facts that would tend to show that: (1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action. *Bucalo,* 691 F.3d at 129. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp.2d 289, 308-09 (S.D.N.Y. 2009). Thus, "[t]o the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity." *Penberg v. HealthBridge Mgmt.*, 823 F. Supp.2d 166, 191 (E.D.N.Y. 2011); *See Galdieri-Ambrosini v. National Realty & Dev.*, 136 F.3d 276, 292 (2d Cir. 1998) ("implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." ).

Plaintiff engaged in protected activity in April of 2010 when he informed Ms. Matusiak that Mr. Amborski gave employees worse assignments and showed her the schedules indicating disparate treatment of older employees; when he attended a meeting with Human Resources in June of 2010 and explained that older employees,

and especially plaintiff, were targeted for disparately difficult assignments; and when his union arranged a meeting with Human Resources and both plaintiff and Gloria Appel reported that Mr. Amborski and Mr. Stoddard continued to subject them to disparate treatment based on age.  However, as there is no allegation that plaintiff complained to Ms. Matusiak, or any other supervisor, that he was being treated unfairly because of his selection for the billboards, let alone that his selection for the billboards constituted discrimination because of his sex, plaintiff has not plausibly alleged retaliation based upon complaints of sex discrimination.  *See Kearney v. ABN Amro*, 738 F. Supp.2d 419, 431 (S.D.N.Y. 2010) (plaintiff did not give defendant notice that she was complaining about her salary because she believed she was being discriminated against on the basis of age or sex); *Foster v. Humane Soc'y of Rochester & Monroe Cnty, Inc*., 724 F.Supp. 2d 382, 395 (W.D.N.Y. 2010) (plaintiff did not engage in protected activity when she complained about problems at work but did not complain that she was being discriminated against on account of her sex).


To establish an adverse action in the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Thus, the anti-retaliation provision is broader than the anti-discrimination provision.  *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).  However, the adverse action must be material rather than trivial: "[a]n employee's decision to report discriminatory behavior cannot immunize

that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.

A causal connection between protected activity and adverse employment action can be established indirectly "by showing that the protected activity was closely followed in time by the adverse employment action." *Bucalo*, 691 F.3d at 131. Although the Court of Appeals has yet to draw "a bright line, defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," it has "previously held that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp*., 596 F.3d 93, 110 (2d Cir. 2010), *quoting Forman-Bakos v. Cornell Coop. Extension of Schenectady Cnty*, 252 F.3d 545, 554 (2d Cir. 2001).

Plaintiff's allegations of discovering his tires slashed on the same day that Mr. Amborski was placed on progressive discipline and no longer permitted to make plaintiff's schedule; being subjected to disciplinary action for a common error by Ms. Matusiak, Mr. Amborski's paramour, approximately one month after Mr. Amborski was subjected to progressive discipline following plaintiff's continued complaints of disparate scheduling; and being assigned by Mr. Amborski to conduct a procedure that Mr. Amborski refused to train him to do and which he was only prevented from performing because the equipment had been sabotaged within two months of Mr. Amborski being placed on progressive discipline following plaintiff's continued complaints of disparate scheduling are sufficient to plausibly allege material adverse action and a causal

connection between his continued complaints of disparate scheduling by Mr. Amborski and the adverse action. Accordingly, it is recommended that plaintiff's claim of retaliation following his complaints of age discrimination proceed.

## CONCLUSION

Based on the foregoing, it is recommended that defendant's motion to dismiss (Dkt. #5), be granted with respect to plaintiff's claims of sex discrimination, age discrimination and retaliation following complaints of sex discrimination, but denied with respect to his claim of retaliation following complaints of age discrimination.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v.*

*Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  <u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).


   The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>


DATED:  Buffalo, New York
     September 27, 2013


         <u>***s/ H. Kenneth Schroeder, Jr.***</u>
         H. KENNETH SCHROEDER, JR.
         United States Magistrate Judge